UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FRANKLIN RAGLAND, et al.,**

       **Plaintiff,**　　　　　　　　　　**Case No. 2:10-cv-879**
　　　　　　　　　　　　　　　　　　　**JUDGE GREGORY L. FROST**
      **v.**　　　　　　　　　　　　　　　**Magistrate Judge Mark R. Abel**

**CITY OF CHILLICOTHE, et al.,**

       **Defendants.**

## OPINION AND ORDER

Before the Court are motions for summary judgment filed by both Defendants (ECF No. 69) and Plaintiffs (ECF No. 70), the parties' respective memoranda in opposition (ECF Nos. 71 and 72), and the reply briefs in support of their respective motions for summary judgment (ECF Nos. 73 and 74).  Defendants seek summary judgment on the entirety of the Plaintiffs' Amended Complaint while Plaintiffs ask for partial summary judgment on the issue of whether Defendants violated a consent decree to which they are bound.  Also before the Court is the Defendants' motion to strike the affidavit of Katherine Hine (ECF No. 75).  For the reasons that follow, the Court (1) **GRANTS** the motion for summary judgment of Defendants as to Plaintiffs' causes of action predicated upon enforcement of the consent decree, (2) **DENIES** the Plaintiffs' motion for summary judgment, (3) declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims and **DISMISSES THE STATE-LAW CLAIMS WITHOUT PREJUDICE TO FILING IN STATE COURT**, and (4)  **DENIES AS MOOT** the motion to strike Ms. Hine's affidavit.

1

## I.  Factual and Procedural Background

This case has its genesis in a previous civil action in this Court.  In *Turner v. City of Chillicothe*, a group of plaintiffs filed an action on behalf of themselves and a class of consumers of residential water services provided by the City of Chillicothe, Ohio.  *See Turner v. City of Chillicothe*, No. 2:00-cv-980 (S.D. Ohio March 20, 2001) (order granting class certification).  The Court certified a class under Fed. R. Civ. P. 23(b)(2) consisting of "all consumers of, or 'applicants' (as defined by Regulation B of the Equal Credit Opportunity Act) for water services from the defendants at any time on or after August 28, 1998."  (*Id.*)   The parties to *Turner* eventually reached a proposed settlement and final consent decree, which they submitted to the Court for approval.  *Turner v. City of Chillicothe*, No. 2:00-cv-980 (S.D. Ohio June 12, 2002) (order conditionally approving proposed consent decree).

After notice to all water customers in the City and before the Court held a fairness hearing, the Court received five letters objecting to the proposed *Turner* settlement.  (*Id.* at 2.)  All of the letters were from landlords.  All of the objections related to the City's practice of holding landlords responsible for delinquent water bills left by a former tenant.  (*Id.*)  The Court noted that "[n]one of the landlords who filed objections did so as a member of the class or as a party to this action; none filed a motion for leave to intervene in this action pursuant to the provisions of F.R. Civ. P. 24."  (*Id.*)  The Court further noted that the proposed consent decree impacted landlords only in one respect: "the proposed consent decree precludes the City from attempting to enforce the landlord's obligation by refusing to provide water service to any subsequent, but otherwise credit-worthy, tenant."  (*Id.*)  The Court found no basis to include the

2

landlords as intervenors in the *Turner* lawsuit and, over the landlords' objections, conditionally approved the parties' proposed consent decree.  (*Id.* at 3-4.)

The Court filed the final Consent Decree and Stipulation of Settlement in *Turner* on September 4, 2002.  *Turner v. City of Chillicothe*, No. 2:10-cv-980 (S.D. Ohio Sept. 4, 2002) ("Consent Decree").  The Consent Decree reiterated the certified class in whose favor the Consent Decree was made: "all consumers or applicants (as defined by Regulation B of the Equal Credit Opportunity Act) for water service from the defendants at anytime on or after August 28, 1998." *Id.* at 2-3.  As part of the Consent Decree, Defendants agreed to "maintain and comply with the written procedures" set forth in the "City of Chillicothe Division of Water and Sewer Termination Policy." *Id.* at 3 and Ex. A.  The Consent Decree specified that these procedures "shall supplant and take precedence over any local practices or rules formally or informally followed by the Defendants whether existing now or adopted in the future."  Under the "Termination Policy" incorporated by the Consent Decree, the City could terminate water service to a customer or consumer for only eight specified reasons set forth in the Policy.  *Id.*, Ex. A, at 11.[1]  The policy also limited to three grounds the reasons that the City could deny water service to an "applicant" for such service.  *Id.*, Ex. A at 24.[2]

---

[1] The eight reasons are (1) non-payment by the customer for water service to the service address affected, (2) emergencies and repairs, (3) at customer request, and only then pursuant to certain termination procedures contained elsewhere in the Termination Policy, (4) meter tampering, theft of service, or fraud, (5) violation of the City Code, (6) condemnation and finding that the premises are vacated and unfit for human habitation, (7) abandonment of the premises, or (8) refusal to permit the City Water Department to have access to the premises to read the water meter or to inspect water equipment.

[2] These three grounds are (1) that the premises to be served requires specified repair or maintenance before water can be safely provided, (2) that the applicant owes the City an outstanding bill for prior water service under an account established in that applicant's name,

In addition to establishing the City's Water and Sewer Termination Policy, the Consent Decree limited the City's ability to modify it. Consent Decree, at 4. The City could modify the Termination Policy only in writing and only after first showing the proposed modifications to the Equal Justice Foundation ("EJF," which served as counsel for the *Turner* Plaintiffs). *Id.* at 4. The City was also required to disseminate the Termination Policy to its employees, train them in its implementation, and monitor compliance with the policy. *Id.* at 5-7.

Eight years after the Consent Decree issued in *Turner*, Plaintiffs Franklin Ragland, Meri Kate Enterprises L.P., Thomas Gustin, Gary Elkin, Mike McCoy, Macy K, LLC, Maggie Enterprises, L.P., Linda Henry, Vancil Henry, Joseph T. Sharp, Oakhill Properties, LLC, Kaye Carnein, Carnein Investments, LLC, Trish McGarvey, White & Barbeee Properties, LLC, Michele Martin, and James A. Demint filed this lawsuit, which they styled as a "Declaratory Judgment Enforcing Consent Decree." (ECF No. 3.) Plaintiffs are owners of properties serviced by the City's water and sewer service; some of the Plaintiffs are also alleged to be consumers of the City's water and sewer service. (Amended Compl., ECF No. 45, at ¶¶ 5-22.) Plaintiffs named the City of Chillicothe and a number of City officials (including the Mayor and City Council members) as Defendants. (*Id.*)

Plaintiffs' Amended Complaint alleges that Defendants have violated the Consent Decree in a number of ways, including--

- Adopting changes to the "Water Department Law" (which Plaintiffs refer to as the "Adopted System") without providing EJF with notice of the changes;

---

and (3) the applicant has not consented in writing.

- Failing to implement "new water application policies" contemplated by the Consent Decree;

- Continuing to require the property owner (*i.e.*, the landlord) to sign a tenant consumer's application for water service as a guarantor of payment for service to the property;

- Denying water service to Plaintiffs due to past due water bills of their tenants;

- Failing to train City Water Department employees on the requirements of the Consent Decree; and

- Filing civil suits against Plaintiffs and other landlords to seek collection for delinquent water bills at their properties.

(Amended Compl., ECF No. 45, at ¶¶ 60-85.)  Based on the factual allegations in their Amended Complaint, Plaintiffs asserted six causes of action, all of which are predicated upon the theory that the Defendants have violated the Consent Decree.  The Amended Complaint expressly asks the Court to enforce the Consent Decree and grant various forms of legal and equitable relief.

Defendants moved to dismiss the Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for want of jurisdiction.  (ECF No. 10.)  Specifically, Defendants argued that Plaintiffs were not parties to the *Turner* consent decree and therefore lacked standing to bring this action to enforce it.  (*Id.* at 5.)  Alternatively, Defendants argued that Plaintiffs were not "intended third-party beneficiaries" of the consent decree or parties within the "zone of interests protected" by the consent decree.  (*Id.* at 6.)  Defendants argued that the *Turner* consent decree was designed to protect the interests of *tenants*, not landlords who comprise the Plaintiffs in this case.

This Court denied the Defendants' Motion to Dismiss.  (Opinion and Order, ECF No. 30.)  Citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975) and *Vogel v.*

*Cincinnati*, 959 F.2d 594, 597 (6th Cir. 1992), the Court recognized the rule that "'a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it.'" (ECF No. 30, at 3 (quoting *Blue Chip Stamps*).) Nonetheless, the Court found standing as to four of the named Plaintiffs (Ragland, Demint, Sharp, and Gustin) because the Plaintiffs' Complaint "sufficiently alleges that [Plaintiffs] Ragland, Demint, Sharp, and Gustin are consumers as that term is defined in the Consent Decree." (*Id.* at 4.) Because the Complaint alleges these four to be "consumers," this Court found that "they are parties to the Consent Decree" and therefore had standing to enforce it.

As to the remaining Plaintiffs, this Court found the requisite Article III standing to allow even those non-parties to the Consent Decree to maintain this lawsuit. (*Id.* at 5-8.) Plaintiffs argued that Article III standing existed for all of them "because each has been sued by the City under provisions which exist only in the Adopted System, which violates their constitutional due process rights." (*Id.* at 6.) In other words, Plaintiffs claimed Article III standing to bring this lawsuit, regardless of their status as parties to the consent decree, because the City's "Adopted System" did not follow the requirements of the *Turner* Consent Decree, meaning that the City's efforts to collect unpaid bills for water service against them (as landlords) violated their constitutional due process rights. This Court found the requirements of Article III standing met by the Plaintiff's allegations. (*Id.* at 7-8.)

Following the Court's denial of the Motion to Dismiss, the parties proceeded with discovery. The parties have now filed cross motions for summary judgment. Defendants move for summary judgment on the Plaintiffs' Complaint, again arguing (among other things) that

6

discovery has confirmed that Plaintiffs do not have standing to bring this suit to enforce the *Turner* Consent Decree. (ECF No. 69.) Plaintiffs move for partial summary judgment, arguing that there is no genuine issue of material fact on the issue of whether the Defendants have violated the Consent Decree. (ECF No. 70.) The cross-motions have been fully briefed and are now ripe for this Court's decision.

## II. Discussion

Summary judgment is proper where no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The parties have devoted a considerable amount of pages in their respective motions for summary judgment to arguments on the merits of the various causes of action alleged by Plaintiffs in this case. The most contentious issue on the merits is whether Defendants have violated the *Turner* Consent Decree. After examining the legal arguments and the applicable law, however, the Court finds that it need not reach the merits of this issue. The Court can ( and does) resolve this case on purely an issue of law — whether the Plaintiffs may enforce the Consent Decree in the manner they seek to do in this lawsuit. The answer to this question is no.

### A. Plaintiffs Lack Standing to Enforce the Consent Decree

In their first argument for summary judgment in their favor, Defendants reprise the contention they made in their Motion to Dismiss — that none of the Plaintiffs has standing to enforce the *Turner* Consent Decree. While Defendants recognize that this Court overruled their earlier Motion to Dismiss, they argue that "further discovery" has illuminated the standing issue and leads to a conclusion that no Plaintiff has standing. Specifically, Defendants contend that the summary judgment evidence shows that the four Plaintiffs whom this Court identified as "consumers" with standing to enforce the Consent Decree (*see* Opinion and Order, ECF No. 30, at 4-5) either do not have an account for water service or have never had a disruption in their water service. (Defts. Mot. Summ. J., ECF No. 69, at 10-11.)  Defendants also argue that none of the Plaintiffs otherwise falls within the Consent Decree's definition of "consumer" or "applicant" so as to make them fall within the class certified in *Turner*. (*Id.* at 12.) For their part, Plaintiffs argue that each of them is a member of the *Turner* Consent Decree class because each of them is an "applicant" within the meaning of Regulation B of the ECOA. (Pltfs. Opp., ECF No. 72, at 1-2.)

Because Defendants have renewed on summary judgment their objection to the Plaintiffs' standing, the Court is forced to confront the standing issue again. In considering the issue again, the Court now realizes that its previous decision denying the Defendants' Motion to Dismiss was incorrect. Though the Court correctly articulated the applicable law in that decision, the Court's application of the law was incorrect. Simply put, the Plaintiffs *are not parties* to the *Turner* Consent Decree and therefore lack standing to enforce it.

8

### *1.     Plaintiffs Are Not Parties to the Consent Decree*

In its Order and Opinion denying Defendants' earlier Motion to Dismiss predicated upon a lack of standing, this Court stated the applicable legal rule—

> There is "a well-settled line of authority from [the United States Supreme] Court [that] establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975) (citing *United States v. Armour & Co.*, 402 U.S. 673 (1971) and *Buckeye Co. v. Hocking Valley Co.*, 269 U.S. 42 (1925)).  *See also Vogel v. Cincinnati*, 959 F.2d 594, 597 (6th Cir. 1992) ("We hold that Vogel, who was not a party to the consent decree, lacks standing to challenge the City's interpretation of the decree.")

(ECF No. 30, at 3.)

This is an accurate statement of the law in the Sixth Circuit.  Though other Circuits have distinguished *Blue Chip Stamps* and held that *intended* third-party beneficiaries of a consent decree have standing to enforce it in federal court,[3] the Sixth Circuit has notably refused to follow suit.  *See Aiken v. City of Memphis*, 37 F.3d 1155, 1168 (6th Cir. 1994) (holding that "even *intended* third-party beneficiaries of a consent decree lack standing to enforce its terms" and rejecting the view of Circuits holding otherwise).  Thus, in the Sixth Circuit, only the *parties* to the consent decree have standing to enforce its terms.  Nonparties to a consent decree, even if they are intended third-party beneficiaries of the decree, lack standing to seek enforcement of the decree in the Sixth Circuit.  *Id.  See also Securities and Exchange Comm'n v. Dollar General Corp.*, 378 F. App'x 511, 514-15 (6th Cir. 2010).

---

[3] *See e.g. Hook v. Arizona Dep't of Corr.*, 972 F.2d 1102, 1015 (9th Cir. 1992) (finding that rule articulated in *Blue Chip Stamps* does not apply to "intended third-party beneficiaries"); *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 286 (D.C. Cir. 1993) (following *Hook*); *Berger v. Heckler*, 771 F.2d 1556, 1565 (2d Cir. 1985) (finding that *Blue Chip Stamps* "was not intended to preclude nonparties" from enforcing a consent decree); *see also United States v. FMC Corp.*, 531 F.3d 813, 820 (9th Cir. 2008) (adhering to *Hook* and noting the Circuit split).

This Court found that four of the named Plaintiffs in this case were "consumers" within the meaning of the Consent Decree and therefore "parties" to it.  (ECF No. 30, at 4.)  Thus, the Court found that these four Plaintiffs were "parties" who had standing to enforce the Consent Decree.  (*Id.*)  Regrettably, this Court's analysis in this respect was wrong and must now be corrected.

A person's status as a member of a certified class in a class action does *not* make that person a "party" to the litigation.  *See Taylor v. Sturgell*, 553 U.S. 880, 894, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008) (identifying "properly conducted class actions" as one of the situations in which a "nonparty" is bound by a judgment).  While a class member may be bound by a class action judgment, the class member is still considered a nonparty except in limited circumstances.  *See Devlin v. Scardelletti*, 536 U.S. 1, 14, 122 S. Ct. 2005, 153 L. Ed. 2d 27 (2002) (holding that an unnamed member of a certified class who objected to the approval of a settlement at a fairness hearing may be a  party for the purpose of appealing from the class action judgment).  The only "parties" to the *Turner* case (and thus the *Turner* Consent Decree) were the named plaintiffs and the named defendants.  Thus, this Court should not have deemed the four "consumer" Plaintiffs to be "parties" to the Consent Decree.  At most, these four Plaintiffs were class members.  But that status did *not* make them parties who have standing to enforce the *Turner* Consent Decree.  *See Reynolds v. Butts*, 312 F.3d 1247, 1249-50 (11th Cir. 2002) (finding "unnamed, non-intervening members of a class in the litigation" to be nonparties who lacked standing to enforce a consent decree).

Whether the Plaintiffs are "class members" is irrelevant to the question of whether they have standing to enforce the Consent Decree.  Even if they are "class members," they assuredly

are not "parties" (this Court's erroneous statement to the contrary earlier in this case notwithstanding). As nonparties, the Plaintiffs lack standing to enforce the *Turner* Consent Decree.

### 2. *Article III Standing*

When this Court denied the Defendants' Motion to Dismiss, the Court also found that all of the Plaintiffs had, at the very least, Article III standing due to their allegations that their constitutional rights have been violated by the City's alleged violations of the Consent Decree. (*See* Opinion and Order, ECF No. 30, at 5-8.) Thus, this Court found that Plaintiffs' satisfaction of Article III standing requirements sufficed to allow them to escape dismissal of their case. The Court also revisits this previous determination and finds that it, too, is erroneous under applicable Sixth Circuit case law.

In *Sanders v. Republic Servs. of Ky., LLC*, 113 F. App'x 648 (6th Cir. 2004), plaintiff property owners sued under 42 U.S.C. § 1983, seeking declaratory and injunctive relief based upon the defendants' alleged violation of an "Agreed Judgment" entered in a prior case. *Id.* at 649. The district court dismissed the plaintiffs' lawsuit for lack of standing and the Sixth Circuit affirmed. Applying *Blue Chip Stamps*, *Vogel*, and *Aiken*, *supra*, the Sixth Circuit had little trouble concluding that the plaintiffs lacked standing to enforce the "Agreed Judgment" because they were not parties to it. *Id.* at 650. Even though the *Sanders* plaintiffs had been parties to the *lawsuit* resulting in the Agreed Judgment, this status was not enough; the plaintiffs were not parties *to the Agreed Judgment itself* and were thus precluded from enforcing it under the Sixth Circuit's precedent. *Id.*

Notably, the Court also rejected the *Sanders* plaintiffs' alternative argument for standing. The plaintiffs argued that they should have standing to assert their § 1983 claims based on "a string of environmental cases" from the United States Supreme Court, which analyzed Article III standing in such cases. *Id.* at 650. The Sixth Circuit rejected the argument:

> Unlike the plaintiffs in [the cases cited by plaintiffs], the plaintiffs here do not seek to bring an action under environmental protection statutes; rather, as strangers to an Agreed Judgment, they seek to enforce their interpretation of its terms. As the district court pointed out, "Plaintiff's suit, in their own words, is an action for declaratory and injunctive relief to prevent the landfill from expanding in the future in violation of the Agreed Judgment." The complaint reflects the accuracy of this characterization. Plaintiffs' characterization of parts of the complaint as "environmental claims" neither changes the nature of the complaint nor confers upon the plaintiffs standing to sue to enforce their interpretation of the 1990 Agreed Judgment.
>
> The plaintiffs do not raise any constitutional claims under Section 1983 that are not wholly derivative of their attempt to enforce their interpretation of the Agreed Judgment.
>
> . . . Because plaintiffs lack standing to challenge the . . . interpretation of the Agreed Judgment, they also lack standing to assert claims that derive from that interpretation.

*Id.* at 651.

The Sixth Circuit's reasoning informs the Article III inquiry here. At its core, Plaintiffs' lawsuit is one to enforce the *Turner* Consent Decree. Indeed, Plaintiffs style their lawsuit as such and the success or failure of their claims rises and falls with the determination of whether the City's actions are consistent with or in violation of the Consent Decree. Thus, even though Plaintiffs may make out a case for Article III standing in the abstract (and, indeed, this Court found that they did when it denied the Motion to Dismiss), the characterization of their lawsuit as being, in part, a civil rights claim based on constitutional due process violations does not grant

them standing. The constitutional arguments Plaintiffs raise are "wholly derivative" of their attempt to enforce the Consent Decree. But because they lack standing to enforce the Consent Decree, Plaintiffs also lack standing to assert claims derived from the Plaintiffs' attempt to enforce it.

Without standing to enforce the Consent Decree, each of Plaintiffs' causes of action in the First Amended Complaint (ECF No. 45) that are predicated upon enforcement of the decree must be dismissed for lack of standing. Specifically, the First, Second, Third, Fourth, and Fifth Causes of Action each seeks enforcement of the Consent Decree or allege theories that derive wholly from Plaintiffs' interpretation of the Consent Decree.[4] As to these causes of action, Defendants' Motion for Summary Judgment is granted on the basis of Plaintiffs' lack of standing and these causes of action are accordingly dismissed.

---

[4] Defendants' Motion for Summary Judgment interprets Plaintiffs' Fourth Cause of Action for "civil conspiracy" as asserting a claim under 42 U.S.C. § 1983, and moves for summary judgment on it as such. (*See* ECF No. 69, at 18.) The Court observes, however, that Plaintiffs' First Amended Complaint does *not* allege a Section 1983 conspiracy under the Fourth Cause of Action. (Amended Compl., ECF No. 45, at ¶¶ 109-113.) Moreover, Plaintiffs' Opposition to Defendants' Motion for Summary Judgment does not argue that their conspiracy claim is based on Section 1983; rather, Plaintiffs simply characterize their claim as one alleging a conspiracy to violate the consent decree (*See* Pltf. Opp., ECF No. 72, at 6-7.) Insofar as Plaintiffs' Fourth Cause of Action does not expressly allege a constitutional claim, the Court construes it as simply another cause of action seeking to enforce the Consent Decree, specifically based on the a theory that the Defendants conspired to violate it. Regardless of its characterization, for the reasons set forth above, Plaintiffs lack standing to enforce the Consent Decree and therefore lack standing to assert the "civil conspiracy" claim in any form.

### B. Plaintiffs' Constitutional Due Process Claim

Even if this Court were to leave undisturbed the Article III standing analysis from its Order denying Defendants' Motion to Dismiss, Plaintiffs still cannot escape summary judgment. As an initial matter, the Court notes that the Article III standing analysis applies, at most, to Plaintiffs' First Cause of Action for "Declaratory Relief." Indeed, this Court ruled that Plaintiffs possessed the requisite Article III standing only with respect to asserting claims alleging violation of their "constitutional due process rights." (ECF No. 30, at 6.) Plaintiffs plead this theory under their First Cause of Action, which alleges that the Defendants' failure to comply with the terms of the Consent Decree, particularly with regard to the City's so-called "Adopted System" being implemented without following the modification process set forth in the Consent Decree, violates their Fourteenth Amendment right to due process of law. (Amended Compl., ECF No. 45, at ¶ 93.)

Plaintiffs' constitutional claim is cognizable, if at all, under 42 U.S.C. § 1983. *See Aarti Hospitality, LLC v. City of Grove City*, 350 F. App'x 1, 11 n.8 (6th Cir. 2009) (construing "direct" constitutional claims as being § 1983 claims). To state a claim under § 1983, Plaintiffs must establish (1) the deprivation of a right secured under the Constitution or federal law and (2) that a person acting under color of state law caused the deprivation. *Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003). Summary judgment is appropriate in Defendants' favor because Plaintiffs cannot meet the first element: even assuming that Plaintiffs can show a violation of the Consent Decree, that violation of a consent decree does not form the basis of a § 1983 claim.

A civil rights action under 42 U.S.C. § 1983 action is not the proper vehicle by which to address an alleged violation of a consent decree. *See Thomas v. Croft*, No. 2:10-cv-74, 2011

U.S. Dist. LEXIS 60628, at *19 (S.D. Ohio June 7, 2011) (citing *Green v. McCaskle*, 788 F.2d 1116 (5th Cir. 1986)).  This is true because "remedial court orders. . . do not create 'rights, privileges, or immunities secured by the Constitution and laws.'" *Green* at 1123 (quoting 42 U.S.C. § 1983)).  Consent decrees can provide *remedies*, but they do not "create or enlarge" federal constitutional or statutory rights.  *Id.  Accord Cagle v. Sutherland*, 334 F.3d 980, 987 (11th Cir. 2003).

Such a rule is especially appropriate here, given the Court's ruling that Plaintiffs are *not* parties to the Consent Decree.  If Plaintiffs are not parties who have standing to enforce the Consent Decree, it follows that they cannot have a valid civil rights claim for a purported violation of the Consent Decree.  If they did, it would create the anomalous result that parties who lack standing to enforce a consent decree directly could do so through a Section 1983 action.  This would effectively be an end run around the lack of standing, which this Court cannot allow.

Accordingly, even if Plaintiffs could build a conceivable case that Defendants have violated the Consent Decree, such a case does not rise to the level of a constitutional due process violation.  Defendants are therefore entitled to summary judgment on the Plaintiffs' First Cause of Action seeking declaratory relief.

        **C.**      **Jurisdiction over Plaintiffs' State Law Claims**

In the Sixth Cause of Action, Plaintiffs allege state-law claims for malicious prosecution and abuse of process.  Plaintiffs base these claims upon the City's institution of civil lawsuits against them for collection of unpaid water bills.  Having disposed of the Plaintiffs' claims based upon the Consent Decree and Plaintiffs' constitutional claims above, the Court must determine

whether to exercise supplemental jurisdiction over these remaining state-law claims. *See Fox v. Brown Memorial Home*, 761 F. Supp. 2d 718, 722 (S.D. Ohio 2011).

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over state-law claims where, as here, "the district court has dismissed all claims over which it has original jurisdiction." In making the decision whether to exercise supplemental jurisdiction, "a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)); *see also Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). When a district court dismisses all claims over which it had original jurisdiction, the balance of considerations is likely to weigh in favor of declining to exercise supplemental jurisdiction. *Gamel* at 952; *see also Moon v. Harrison Piping Supply,* 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.").

In assessing the factors of judicial economy, fairness, and comity, a district court is guided by several specific considerations. Among these are (1) whether the district court should avoid needless state law decisions as a matter of comity, (2) whether the district court, in its disposition of federal-law claim, resolved a related state-law issue, (3) whether similar predicate factual findings are necessary to resolve both the state and the federal claims, (4) whether the district court has expended significant time and resources, (5) whether dismissal or remand will result in duplicative litigation, (6) whether the matter has been on the district court's docket for a

significant time, (7) whether the parties have completed discovery, (8) whether plaintiff has abandoned all federal claims at a late stage of the proceedings, and (9) whether a summary judgment motion has been extensively briefed and is ripe for review. *Fox*, 761 F. Supp. 2d at 723-24 (citing various Sixth Circuit cases identifying these factors).

While some of the factors favor the Court's exercise of supplemental jurisdiction — for example, this case has been pending in this Court for more than 18 months, discovery is completed, and the parties have extensively briefed their summary judgment motions — the Court nevertheless finds that the balance cuts against exercising supplemental jurisdiction over Plaintiffs' malicious prosecution and abuse of process claims. Weighing heavily against supplemental jurisdiction is the interest in avoiding the needless decision of state-law issues as a matter of comity. Plaintiffs' malicious prosecution and abuse of process claims are based on the theory that the Chillicothe Law Director and Assistant Law Director filed civil suits against Plaintiffs in Chillicothe Municipal Court in an attempt to recover money for unpaid water bills and that said civil suits are invalid under the Consent Decree (and therefore under invalid under applicable city ordinances governing City water service) . (Amended Compl., ECF No. 45, at ¶¶ 119-124.)  It is inappropriate for the Court to weigh in on the state-law issues of whether the torts of malicious prosecution and abuse of process apply to this set of facts, particularly considering that the parties' briefing on the motions for summary judgment indicate that all but one of the civil suits has either been stayed by the state courts or dismissed voluntarily by the City. (*See* Pltfs. Opp. to Mot. Summ. J., ECF No. 72, at 7-8; Preston Aff., ECF No. 69-6, Exhs.C and D.)

Moreover, this Court's decision on the federal issues did not reach the substantive merits of the Plaintiffs' claims that the City is acting unlawfully.  Accordingly, this Court's decision does not inform the resolution of the remaining state-law claims.  Because this Court has neither disposed of state-law issues in resolving federal claims nor made factual findings that inform the state-law claims, it cannot be said that this judicial economy or convenience weighs in favor of adjudicating the malicious prosecution and abuse of process claims.

Finally, the interest in avoiding duplicative litigation is not implicated here.  It appears that most of the state-court activity was stayed pending the outcome of this case.  Upon the conclusion of this matter, those state court proceedings will presumably resume.  The state courts provide a readily available and convenient forum for Plaintiffs to defend against the suits commenced by the City and to raise their state-law claims for malicious prosecution and abuse of process.

For these reasons, the Court concludes that the remaining state-law claims for malicious prosecution and abuse of process should be dismissed without prejudice.

## IV.  Conclusion

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (ECF No. 70) is **DENIED.**  Defendants' Motion for Summary Judgment (ECF No. 69) is **GRANTED** as set forth in this Opinion and Order with regard to the First, Second, Third, Fourth, and Fifth Causes of Action in Plaintiffs' First Amended Complaint.  Plaintiff's Sixth Cause of Action alleging state-law claims for malicious prosecution and abuse of process are **DISMISSED WITHOUT PREJUDICE** to their refiling in state court.  Defendant's Motion to Strike the Affidavit of Katherine Hine (ECF No. 75) is **DENIED AS MOOT.**

**IT IS SO ORDERED**.

        /s/ Gregory L. Frost
        **GREGORY L. FROST**
        **UNITED STATES DISTRICT JUDGE**